HEARD APRIL TERM, 1872.

## BUCHANAN *vs.* McNINCH.

A gift of an inconsiderable part of the donor's property is not fraudulent and void as against existing creditors, if the donor reserves sufficient property to pay his debts and his subsequent insolvency arises from a sudden and extraordinary event which he could neither foresee nor prevent, as, for instance, the general emancipation of 1865.

BEFORE THOMAS, J., AT CHESTER, NOVEMBER TERM, 1870.

Bill to settle up the estate of Samuel McNinch, who died insolvent and intestate in the year 1867. Franklin A. McNinch, a son, and Celia A., a daughter of intestate, with her husband Hazel E. Davis, were parties defendant, and one of the objects of the bill was to obtain a decree setting aside as fraudulent, and void as against creditors, two deeds of gift of lots, in the village of Chester, made by the intestate, one dated November 2d, 1863, to Hazel E. Davis, in trust for Celia A., his wife, and the other, dated April 6th, 1864, to Franklin A. McNinch.

When the deeds were made, the debts of the intestate amounted to about $3,200, and most, if not all, these debts remained unpaid at the time of his death. His property, at that time, consisted, besides the lots, of seven slaves, marble in his marble yard, in Chester, horses, mules and a wagon, valued at $10,000. He owned no real estate except the lots, and they were of inconsiderable value as compared with his personalty. The property which he left was sold by his administrator for $303.50, which satisfied his funeral expenses and the expenses of administration, and left $101.75 to be applied to the judgment herein next mentioned.

The plaintiff was the largest creditor of the intestate when the deeds were made. He obtained a judgment by confession for his debt on the 11th January, 1867, and it then amounted to $801.54.

The deeds of gift were recorded in the proper office, and the donees entered into possession and improved the lots.

The case was tried before the Circuit Judge who found the facts above stated. He also found that the insolvency of the intestate was caused by the emancipation of his slaves in 1865, that the deeds were not fraudulent, either in fact or in law, and he rendered a judgment dismissing the bill as against McNinch and Davis and wife, with costs.

The plaintiff appealed.

*Patterson*, with whom was *Rice*, for the appellant, contended: 1. That the deeds were void for actual fraud. 2. That they were fraudulent and void in law as to existing creditors.—*Blakely* ads. *Kerkly*, 2 N. & McC., 544; *Hudnal* vs. *Teasdale*, 1 McC., 227; *Izard* vs. *Middleton*, Bail. Eq., 228; *Richardson* vs. *Rhodus*, 14 Rich., 96; *Brock* vs. *Bowman*, Rich. Eq. Cas., 185. That this case was within none of the exceptions.—*Salmon* vs. *Burnett*, 1 Conn., 525; *Hopkirk* vs. *Randolph*, 2 Brock, 183; *Abbe* vs. *Newton*, 19 Conn., 27.

*Brawley*, contra, contended that the gifts were meritorious acts, and having been *bona fide* made by a father in prosperous circumstances at the time, they were valid in law, and did not become fraudulent and void because of his subsequent insolvency, caused by a sudden unforeseen and extraordinary event. He cited *Doe* vs. *Routledge*, Cowp., 708; *Tunno* vs. *Trezvant*, 2 DeS., 264, 270; *Leech* vs. *Wilkinson*, 5 Ves., 386; *Howard* vs. *Williams*, 1 Bail., 581; and *Salmon* vs. *Bennett*, 1 Conn., 525.

Aug. 14, 1872.   The opinion of the Court was delivered by .

Moses, C. J.   We do not perceive anything in the evidence which would justify the Court in setting aside the deeds on the ground of actual fraud.   The case was tried by the Judge without the intervention of a jury, and his conclusion on the facts submitted through the testimony, must be accepted as final.

Our examination will be confined to so much of the appeal as charges against him error in law in sustaining the deeds as valid against existing creditors.

Whatever may have been the doubts prevailing at one time from the conflict in the decisions in this State, it must be regarded as now settled beyond dispute, that as a general rule, as against creditors existing at the time of the conveyance, if it was voluntary it is fraudulent in law, and void.—*Izard* vs. *Izard*, Bail. Eq., 228; *Brock* vs. *Bowman*, Rich. Eq., Cas., 184; *Richardson* vs. *Rhodus*, 14 Rich., 95.   These cases do not make it a question of intention, but a conclusion of law, unaffected by the fact that the donor, at the time of the gift, had a sufficiency of property outside of that included in the deed, to meet his debts.   A qualification, however, has been conceded " that where the indebtedness is slight, as for the current expenses of the family, or the debts are inconsiderable as compared with the value of the donor's estate, and the creditor, by his delay or laches, had allowed the reserved estate to be wasted, in such case the conveyance will be held valid."—*Ibid.*

We think, too, that another exception may be added, and which finds justification in the circumstances of this case.   It is that where the donor makes a voluntary conveyance of an inconsiderable portion of his estate, leaving unincumbered a probable sufficiency for the payment of his existing debts, it shall prevail, if his subsequent insolvency arises from the loss of his property by sudden and extraordinary events which he could not control or prevent.

The principle upon which it proceeds rests upon common sense, and no construction of any statute can be safe which is inconsistent with it.   A father, as in the case before us, being indebted in about the sum of thirty-two hundred dollars, with property to the value of ten thousand dollars, in 1863 and 1864, by separate deeds, conveys two inconsiderable parcels of it to two of his children.   A large proportion of the property consisted of slaves of the value of five thousand one hundred and fifty dollars, one of whom he afterwards sold.   In 1865 these slaves, on the fact and faith of whose possession he had principally obtained credit, and who, in them-

selves, were more than adequate by sale to meet all his debts, are emancipated by the results of the war, and lost to him as the means of satisfying them. His insolvency is referable not to any act of his own; not to any untoward speculation; not to any engagement where the chances of loss were greatly in excess of those of gain, but to causes which, though directly operating on his property, do not owe their origin to any work of his head or hand. Is an insolvency resulting from the sudden loss of property by fire or storms, to be viewed, in regard to all its legal consequences, as insolvency arising from an increase of debt in excess of the means of meeting it? In the one case the donor has contributed to the end, and his indiscretion may often amount to a fault. In the other, the loss has been independent of any action on his part, and could not have been averted by any efforts in his power. The cases agree "that the solvency must be judged of by the event," for it is that by which the validity of the gift is to be tested.

The manner of the insolvency would, therefore, seem to be an important element in determining its influence on the transaction.

In *Blakely* ads. *Kirkley*, 2 N. & McC., 546, Judge Richardson, delivering the opinion of the Court, speaking of the obligation on the donor to shew very abundant property, over and above the gift, retained for the payment of his debts, says, "and if, in the ordinary course of events, such property turns out to be inadequate to the discharge of his debts, the presumption of fraud remains, although the property reserved may have been deemed originally adequate to that purpose, if exclusively so applied." In *Izard* vs. *Izard*, Chancellor Harper, referring to the qualification which would save the voluntary conveyance from the imputation of fraud, says: "Whether there may not be a further exception when the failure has been produced by some sudden and unforeseen casualty, such as a fire or a tempest, it is not necessary to enquire. The fluctuations in the value of property, occasioned by the mercantile condition of the country, cannot, however, be ranked among those casualties." The intimation from these expressions is very clear, that if the insolvency is the result of events "out of the ordinary course," or of casualties which, if even foreseen, could not have been prevented, it should not contribute to the destruction of the deed. The interest of one may be affected in a particular transaction to which, with another, he may be a party, depending on the relation in which each stands to it, but consequences to the one, following causes for which he is not responsible, should not operate

to the prejudice of either. A different rule would be inconsistent with every principle of justice. The slaves of the donor here, at the date of the instrument, were more than sufficient to meet all his liabilities. His subsequent insolvency, through which this plaintiff has lost his debt, was in consequence of their emancipation, by an authority which he could not resist, and should, therefore, have no effect against the deeds which the proceeding seeks to avoid.

It is ordered that the motion be dismissed, and the judgment affirmed.

*Willard,* A. J., and *Wright,* A. J., concurred.